## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH F. BERTUCCI** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10655** |
| **AETNA LIFE INSURANCE COMPANY** | **SECTION "L" (4)** |

### ORDER & REASONS

Pending before the Court is Plaintiff's Motion for Summary Judgment Based on the Administrative Record. R. Doc. 66. Defendant opposes the motion. R. Doc. 68. Plaintiff has filed a reply. R. Doc. 69. Defendant has filed a sur-reply. R. Doc. 71. Plaintiff has also filed a sur-reply. R. Doc. 74. Oral argument was held on Wednesday, July 22, 2020 by videoconference. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I.   BACKGROUND

This case arises out of a dispute over the denial of long-term disability benefits to Plaintiff Elizabeth F. Bertucci, a former Resource Manager II for Capital One Financial Corporation ("Capital One"). At all relevant times hereto, Defendant Aetna Life Insurance Company ("Aetna") provided insurance coverage to Capital One under a Long-Term Disability Policy (Policy No. GP699982) ("LTD Policy"). Aetna is named as the Claims Administrator for the LTD Policy, which falls within the definition of an Employee Welfare Benefit Plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Under ERISA, "a person denied benefits under an employee benefit plan [may] challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1001, *et seq.*, 29 U.S.C. § 1132(a)(1)(B)). On May 23, 2019, Bertucci filed suit against Aetna under ERISA,

challenging its denial of her claim for long-term disability benefits and seeking to recover benefits due under the LTD Policy. R. Doc. 1. The facts underlying the lawsuit are as follows.

Bertucci reports a decades-long history of back pain beginning in her mid to late 20s. H0416. In March 2006, she underwent a laminectomy to remove a portion of the vertebrae at L5/S1, which alleviated the back pain for approximately one year but caused pain to her left leg and foot. H0416. The back pain returned after a year, prompting Bertucci to submit to a lumbar fusion at L4/5 and L5/S1 in August 2011. H0417. Bertucci continued to suffer back pain following the lumbar fusion, and in December 2013, the hardware was removed. H417.

On August 10, 2011, Bertucci ended her employment with Capital One based on her medical condition, and applied for both short- and long-term disability benefits. R. Doc. 66-1 at 1. Aetna originally denied her short-term claim but reversed the decision on appeal. *Id*. When Bertucci's short-term benefits ran out, Aetna approved her long-term claim after finding that Bertucci meet the definition of "disability" under the plan. H0079. Specifically, the LTD Policy defines "disability" as:

> (a) In the first 24 months of certified period of disability[,] [y]ou are not able, solely because of disease or injury, to perform the material duties of your own occupation; however, if you start to work at a reasonable occupation, you will no longer be deemed disabled.
>
> (b) After the first 24 months of a certified period of disability[,] [y]ou are not able, solely because of disease or injury, to work at any reasonable occupation.

H0003. After applying the policy's 187-day elimination period, Aetna certified Bertucci's eligibility for benefits beginning on February 13, 2012. H0079. The decision letter further provided that, pursuant to the policy's definition of disability, if Bertucci remained disabled on February 13, 2014, she would have to demonstrate her inability to work at any reasonable occupation. H0079. Before the two-year period ended, Aetna corresponded with Bertucci on multiple occasions to

confirm her continuing eligibility. H0153, H0178, H0185.

On October 23, 2014, Aetna terminated Plaintiff's long-term disability benefits, explaining that she was no longer disabled under the terms of the policy because she could work in the following "reasonable occupations": securities trader, financial planner, and compliance officer, among other roles. H0196-199. Aetna reached this decision after considering a number of medical reports from Bertucci's treating physicians, a peer to peer consultation performed by Dr. Robert Cirincione, a Functional Capacity Evaluation ("FCE"), and a Vocational Review. H0197. Specifically, Aetna explains that visit notes prepared by Bertucci's treating physicians during follow ups to her lumbar fusion operation generally noted that Bertucci was doing well and "would be off work completely for proper healing." H0196. Aetna also consulted a Peer to Peer review of Bertucci's medical records completed by Dr. Cirincione, in which Dr. Cirincione noted that although Bertucci reported an inability to sit for five minutes, her "records include evaluations by . . . medical providers that included conversations of greater than 30 minutes." H0197. Dr. Cirincione attempted to discuss his conclusions with treating physicians Dr. Thomas and Dr. Zeringue, but was unable to make contact. H0197. Accordingly, Dr. Cirincione "concluded the records do not support [Bertucci's] subjective complaints of not being able to sit or stand for more than five minutes." H0197.

In its denial, Aetna also relied on an FCE performed on September 23, 2014, in which the examiner could not determine a maximum level of function due to Bertucci's "inconsistent and self-limiting behavior," but opined that Bertucci would be capable of performing sedentary full time work. H0197. Aetna indicated that it had contacted Bertucci's medical providers to provide input on the Peer to Peer review and the FCE, but that no input had been provided. H0198. Based on the limitations identified by Dr. Cirincione and the FCE, Aetna conducted a vocational review

3

that identified comparable occupations it believed Bertucci could perform in light of her physical capacity and educational requirements and denied her claim on that basis. H0198.

Bertucci appealed, arguing that Aetna's decision was contrary to the opinions of Dr. Thomas and Dr. Zeringue, who had not cleared her for work and had opined that she would only be able to sit sporadically. H1351. Bertucci further suggested that Dr. Cirincione was "not an unbiased independent medical professional," and cited two cases in which his opinion was used in litigation involving an insurance company's decision to deny benefits. H1351. Further, Bertucci alleged that Dr. Cirincione's opinion that she could sit for extended periods of time is contrary to her own affidavit, the conclusions of her treating physicians, and the results of her MRIs. H1352. Lastly, Bertucci argues that the jobs Aetna identified "are all beyond Ms. Bertucci's education, training, and experience," and "all require sedentary demand" which Bertucci does not have "due to poor sitting tolerance." H1353. Bertucci also stresses that these roles require licenses she does not have and "exceed the level of . . . earning that she had before becoming disabled." H1353.

In support of her appeal, Bertucci submitted her own affidavit describing the pain she experiences and averring that "[p]rolonged sitting and standing increases my pain. The only relief I can get it through lying down. My pain is unrelenting, distracting and affects by ability to focus." H1355. Bertucci also submitted a declaration of Dr. Thomas, who stated that he had reviewed the results of the September 23, 2014 FCE, and did "not agree with the examiner's conclusion that Ms. Bertucci has the capacity for constant sitting during an 8 hour workday." H1356. He continued, "I believe that Ms. Bertucci is unable to perform work that is sedentary to light in nature as doing so has increased her level of pain. H1356. Bertucci also submitted a report prepared by Bobby Roberts, M.Ed., who completed a Vocational Evaluation. Mr. Roberts concluded that the FCE report contained "numerous errors and inaccurate conclusions." H1357. Notably, Mr. Roberts

4

explained that the FCE examiner's conclusion that Bertucci's limitations were "inconsistent" and self imposed is erroneous because patients with failed back syndrome "will know specific activities that increase symptoms and involuntarily avoid those situations. This is not a conscious process but one that is unconscious as the brain has been programmed . . . to recognize an exacerbating situation and reacts to avoid the situation or limit engagement." H1357. Further, Mr. Roberts explained that "[t]he FCE conclusion that Ms. Bertucci can sit constantly is inconsistent with the data contained in the report and the sitting that was reported is not sufficient to perform Sedentary work, nor does it indicate that she could perform Sedentary work functionally." H1358. Mr. Roberts also opined that the occupations Aetna identified were not appropriate because they required certain degrees or licenses that Bertucci does not have. H1359. He concluded, "Additionally, all of the jobs listed as identified as having a Sedentary Physical Demand Level. We know from the actual FCE data that she would not meet the functional requirements of Sedentary work in addition to not qualifying for any of the positions listed." H1359.

Aetna denied the appeal on June 22, 2015, on the grounds that Bertucci could work as a Credit Analyst or a Securities, Commodities, and Financial Service Sales Agent. H0220-221. In denying her appeal, Aetna again cited her treating physicians' reports as well as Dr. Cirincione's independent review, which concluded that "the medical evidence did not substantiate a functional impairment." H0220. Aetna concluded that based on her medical history and Dr. Circincione's findings, Bertucci "would be restricted to sitting for six out of eight hours listing and carrying pounds occasionally with frequent position changes as well as three to five minutes of stretch breaks every hour. These restrictions and limitations would enable Ms. Bertucci to perform a sedentary occupation on a full-time basis." H0220. Bertucci filed suit against Aetna on July 6, 2015. H1291-1294. Following mediation, Aetna reinstated Bertucci's benefits in a letter dated

November 10, 2016. H0225.

The claim was thereafter reviewed for continued medical impairment. H0274. Aetna terminated Bertucci's benefits a second time on April 17, 2018. H0229, H0234, H0247. On October 31, 2017, Aetna referred Bertucci to an Independent Medical Examination, H0247, that was performed on January 12, 2018 by Dr. Todd, H0249. A copy of Dr. Todd's report was sent to Dr. Thomas, who was asked to provide input on Dr. Todd's findings. H0257.

Aetna terminated Berucci's LTD benefits on April 17, 2018. H0273. In its termination letter, Aetna again explained that Bertucci was no longer "disabled" under the terms of the policy because she was deemed capable of performing a full-time sedentary job. H0274. Specifically, Aetna made this decision in reliance on Dr. Todd, the IME physician's opinion that Bertucci "would be capable of functioning at a sedentary level with accommodations of frequent position changes to get out and move around when needed and the ability to sit when needed." H0274. Aetna concluded that "[a]ll the above restrictions can be performed in an 8 hour day." H0274. Aetna also noted that although it had reached out to Dr. Thomas for a response to Dr. Todd's report, no response was received. H0274. Aetna also relied on independent surveillance of Bertucci, during which she was "observed driving and arriving home." H0274. Based on Dr. Todd's assessments, the lack of response from Dr. Thomas, and the independent observation, Aetna conducted a Vocational Review of Bertucci's "work history, experience, and education" to identify occupations Bertucci could perform despite her physical limitations. Aetna concluded that Bertucci could be employed as a Credit Analyst or Securities, Commodities, and Financial Service Sales Agent and that these occupations constituted "reasonable occupations" under the terms of the policy. H0274. Aetna terminated Bertucci's benefits on the foregoing basis. H0274.

Bertucci appealed the termination on October 12, 2018, arguing that her debilitating

medical condition prevents her from performing any of the identified occupations. H0406-0412. In support of her appeal, Bertucci submitted her own affidavit, the FCE report, a letter from the Social Security Administration ("SSA") explaining that Bertucci would continue to receive SSDI benefits, additional medical records, and a letter from Dr. Thomas prepared in response to the IME report. Specifically, Bertucci argued the medical evidence does not support Aetna's finding that she was capable of returning to full time sedentary work. Citing her medical records, Bertucci notes she suffers from constant, severe pain that she routinely seeks medical treatment for. H0407. She also explains that Dr. Thomas completed an Attending Physician Statement on September 11, 2017, indicating that she is incapable of sitting or standing for more than 10 minutes at a time. H0854. Even Dr. Todd noted poor sitting tolerance, stating that although she "would be capable of functioning at a sedentary level . . . she will need to be able to move around frequently and stand up frequently, even perhaps as often as every 15 minutes." H0912. Bertucci cites the vocational evaluation completed by Mr. Roberts submitted in connection with her previous appeal, in which he opined that she would not be employable in any of the identified positions because she lacks the special licenses, degrees, training, or skill for those jobs. H0448–53. In addition to these extrinsic limitations, Bertucci argues her present condition would prevent her from working in any of these jobs, as "[i]t is difficult to imagine the type of sedentary jobs in which one would be able to be productive while having to stand every 15 minutes. The reality of the situation is that people will push through the pain in order to be productive, thereby worsening symptoms." H0408.

In addition to her medical records, Bertucci also relies on a supplemental letter from Dr. Thomas, prepared in response to Dr. Todd's report, a second FCE that took place on August 14, 2018, and the SSA's decision that her disability is continuing. H0413, H0414. Dr. Thomas's letter explains that he "believe[s] she would have difficulty sitting or standing or working for an 8 hour

day given her consistent post-laminectomy syndrome and postoperative pain. I do think she would only be able to do sedentary duty with frequent accommodations as I have previously discussed." H0413. Unlike the September 23, 2014 FCE, the August 14, 2018 FCE reported that "[b]ased on the results [of the examination], [s]he does not meet the full criteria for competitive Sedentary Work." H0414. Notably, the FCE indicated that Bertucci "has a decreased sitting tolerance of 50 minutes maximum during the interview that decrease to 15 minutes during seated tasks." H0414. Lastly, Bertucci argues that Aetna disregarded the SSA's decision that her disability was ongoing on October 11, 2017. This decision effectively upheld the SSA's finding from March 27, 2015, in which the SSA Administrative Law Judge decided that Bertucci was disabled and that "[c]onsidering [her] age, education, work experience, and residual function capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." H1382.

Aetna denied Bertucci's appeal on January 11, 2019 on the grounds that "based on the documentation provided for review, Ms. Bertucci does not appear to have clearly defined functional impairments from sedentary occupation." H0307. Specifically, Aetna referred Bertucci's claim file to "an independent doctor who specializes in occupational medicine review," for a peer review. This doctor reported that although Bertucci suffers from "chronic persistent pain . . . this condition does not result in total disability." He concluded that she "would be capable of maintaining a full-time work schedule" with the following limitations, among others: "There is no restriction with regard to sitting. Standing/walking should total a combined 2 hours per day, with each not lasting longer than 15 minutes continuously." H0307. Based on the opinion that Bertucci could perform sedentary work with restrictions, Aetna conducted a vocational assessment that considered Betrucci's transferrable work skills and a physical capacity, as well as a Transferable

Skill Analysis and a Labor Market Analysis, and concluded that Bertucci could work as a Department/Business Manager or a Sales Manager. H0307-0308. Aetna explained these occupations were identified after considering Bertucci's education, work history, transferable skills, and the fact that her licenses were no longer active. H0308. As this was a final decision, Bertucci filed the instant lawsuit seeking challenging the denial of disability benefits under ERISA. H0308.

## II.   PENDING MOTION

Bertucci argues she is entitled to summary judgment in her favor on the grounds that Aetna wrongfully terminated her disability benefits. R. Doc. 66. Specifically, Bertucci argues that under either a de novo or abuse of discretion standard of review, the Court should overturn Aetna's decision because Bertucci is disabled under the terms of the policy as her physical condition makes her incapable of performing sedentary work for eight hours a day.

Aetna contends summary judgment in Plaintiff's favor is not warranted because the administrative record contains sufficient evidence to affirm its finding that Plaintiff could be employed as a business/department manager or sales manager despite her physical limitations. R. Doc. 68.

## III.   LAW & ANALYSIS

### A.  Standard of Review

ERISA "provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 520–21 (5th Cir. 2000) (citing 29 U.S.C. § 1132(a)(1)(B)). "[A] denial of benefits challenged under § 1132(a)(1)(B) is generally reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Vega v. Nat. Life Ins. Services, Inc.*, 188 F.3d 287, 295 (5th Cir. 1999).

The parties disagree as to whether the Plan gives Aetna discretionary authority to determine eligibility, and consequently, which standard of review applies. Aetna contends it has discretionary authority because it has been designated as the Claims Administrator and because the Plan documents vests the Administrator with "full power and discretion to administer the Plan in all of its details," and defines "Administrator" as including any designees "[t]o the extent the Benefits Committee has designated any other person to carry out any of its responsibilities under the Plan." H1521, H1532. In contrast, Bertucci argues that although the Plan grants the Benefits Committee as the Administrator discretionary authority and provides the Administrator with the ability to designate certain functions, Aetna has never been delegated any *discretionary* powers.

The Court looks to the language of the plan for the answer. The plan document, discussing in detail the terms of Capital One Financial Corporations' Employee Welfare Benefits Plan, defines "Administrator" as follows:

> "Administrator" means the Benefits Committee . . . or such other persons or committees as may be appointed from time to time by the Benefits Committee to supervise the administration of the Plan . . . . To the extent the Benefits Committee has designated any other person to carry out any of its responsibilities under the Plan, the term Administrator shall also include such designee.

H1521. The plan document discusses plan administration in Section 7.2, which provides,

> The administration of the Plan shall be under the supervision of the Administrator. It shall be a principal duty of the Administrator to see that the Plan is carried out, in accordance with its terms . . . . The Administrator shall have full power and discretion to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the Administrator's powers shall include . . . the following authority . . .

10

> (a) To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan . . .;
> (b) To interpret the provisions of the Plan, make findings of fact, and correct errors in, supply omissions from, and resolves inconsistencies or ambiguities in the language of the Plan . . .;
> (c) To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;
> (d) To appoint such agents, counsel, accountants, consultants and other persons as may be required to assist in administering the Plan;
> (e) To allocate and delegate its responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan; and
> (f) To determine the benefits provided to Participants under the Plan . . . .

H1533.

The Summary Plan Description ("SPD") is substantially similar. Specifically, the SPD identifies the Benefits Committee of Capital One as the Plan Administrator and explains that it "may also delegate certain administrative functions to an insurer, third party administrator or other entity, . . . in which case any reference herein to the Benefits Committee or the plan administrator includes such delegate." H1465. The SPD identifies Aetna as the Claims Administrator for the LTD policy. R. Doc. 68 at 3–4. The SPD continues:

> The Benefits Committee of Capital One Financial Corp. is the Plan Administrator and has the discretionary power to administer the plans and/or designate others to administer the plans. The plan administrator's discretionary powers include, but are not limited to, to the power to:
> * Make and enforce such rules and regulations as deemed necessary or proper for the efficient plan administration;
> * Interpret the plans;
> * Decide all questions concerning plans . . .
> * Determine the eligibility of any person to participate in plans and the entitlement of any person to any plan benefits . . . .

H1468.

Based on the foregoing, Bertucci argues that although the Plan provides that the Benefits Committee of Capital One *may* delegate its discretionary authority, "nowhere in the plan is there an *actual* delegation of its discretionary authority to Aetna." R. Doc. 70 at 3 (emphasis added). To

11

the extent the SPD identifies Aetna as the Claims Administrator, Bertucci argues mere identification does not constitute a delegation of *discretionary* authority. R. Doc. 70 at 3. Even if the identification of Aetna as the Claims Administrator in the SPD could be construed as a grant of discretionary authority, Bertucci contends such a grant is unenforceable because it was rooted in the SPD and not the plan document itself. R. Doc. 70 at 3 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)).

In contrast, Aetna argues that because the Benefits Committee has the power to designate others to carry out its responsibilities and because the term "administrator" includes any designees, "an Administrator by designation has the same 'full power and discretion' to administer the Plan granted to the Benefits Committee, as Administrator, under Section 7.2." R. Doc. 71 at 3. Aetna argues that because the plan allows the Administrator to designate third parties "from time to time," particular designees are not named in the plan document. *Id.* In sum, Aetna argues, "[i]t is clear that the Administrator allocated and designated to Aetna its claims administration authority and responsibilities under the long term disability benefit component of the Plan by naming Aetna as the Claims Administrator in the SPD and by purchasing the Aetna LTD Policy to insure and fund the long term disability benefit component of the plan." R. Doc. 71 at 4.

The operative question at this juncture is whether Aetna has been delegated discretionary authority to interpret the Plan's terms and determine Bertucci's eligibility for benefits. In answering this question, the Court is cognizant that "[d]iscretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir. 1992). However, an express delegation does not depend on a "linguistic template" or any "magic words." *Id.* at 636–37. "Rather, the Court must consider the plan language

as a whole, focusing on the breadth of the administrator's power." *Ravannack v. United Healthcare Ins. Co.*, No. CIV.A. 14-2542, 2015 WL 2354186, at *1 (E.D. La. May 15, 2015) (citing *Wildbur*, 974 at 637).

In answering this question, the Court is authorized to consider both the Plan document and the SPD. *See Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 869 (5th Cir. 2018), *reh'g denied* (Nov. 2, 2018) (finding a delegation of discretion in an SPD where the plan document's language was ambiguous). Bertuccis' position—that to the extent a delegation of authority is provided in the SPD and not the Plan itself, the delegation is ineffective under *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)—does not survive a careful reading of the opinion. In *Amara*, the Supreme Court held that although summary plan documents "provide communication with beneficiaries *about* the plan," they "do not themselves constitute the *terms* of the plan." 563 U.S. at 438. However, *Amara* specifically involved a situation where the terms of the plan's written instruments *conflicted* with the summary plan description. *Amara* is distinguishable because here, the SPD's terms do not conflict with the plan document. As explained in greater detail below, the Plan document vests the Benefits Committee with discretionary authority and authorizes the delegation of certain functions. The SPD in turn provides for such delegation by identifying Aetna as the "Claims Administrator." More importantly, the Plan document specifically provides that "[t]his document, *together with the Plan's summary description* . . . will constitute the written Plan document for the Plan." H1520. Because the SPD is incorporated into the Plan itself and does not conflict with the terms of the Plan document, the Court may look to the Plan and SPD at this juncture. *See Caskey v. Prudential Ins. Co. of Am.*, No. CV 18-694-JWD-RLB, 2020 WL 4088954, at *27 (M.D. La. July 20, 2020) ("Because the Oxy SPD is incorporated into the Plan, and is consistent with the Oxy Wrap, the Court finds that *Amara* is distinguishable in this case.").

A close review of the Plan and the SPD indicate that Aetna has discretionary authority in this matter. First, the Plan properly vests the Benefits Committee of Capital One, as the Plan Administrator, with discretionary authority. H1521; H1532. Specifically, the Benefits Committee has the "full power and discretion to administer the Plan in all of its details," including the power interpret the plan's terms and determine eligibility of all participants. H1532. Similarly, the SPD explains the Benefits Committee "has the discretionary power to administer the plan." H1468. The Benefits Committee's powers as listed in the SPD also include the power to interpret the plan and determine eligibility. H1468.

Second, the Plan specifically authorizes the Benefits Committee to "delegate its responsibilities under the Plan." H1532. The Plan document provides that "[t]o the extent the Benefits Committee has designated any other person to carry out any of its responsibilities . . . the term Administrator shall also include such designee." H1521. Similarly, the SPD explains that the Benefits Committee is the plan administrator, and that "the plan administrator may delegate certain administrative functions" to a third party. H1465. The SPD specifies that to the extent a delegate is identified, "any reference herein to the Benefits Committee or the plan administrator includes such delegate." H1465.

Third, the Benefits Committee has designated Aetna as the Claims Administrator for the plan at issue by naming it as such in the SPD. However, whether this designation vests Aetna with the *discretionary* powers necessary to trigger the deferential standard of review is a more complicated question. Most cases in which a valid delegation of discretionary authority exists involve much more specific grants of power. For example, in *Estate of Thompson v. Sun Life Assur. Co. of Canada*, the Fifth Circuit found a valid delegation of discretionary authority from the Plan Administrator to the third-party insurer based on the following language found in the policy:

14

> The Plan Administrator has delegated to Sun Life its entire discretionary authority to make all final determinations regarding claims for benefits under the benefit plan insured by this Policy. This discretionary authority includes, but is not limited to, the determination of eligibility for benefits, based upon enrollment information provided by the Policyholder, and the amount of any benefits due, and to construe the terms of this Policy.
>
> Any decision made by Sun Life in the exercise of this authority, including review of denials of benefit, is conclusive and binding on all parties. Any court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious.

354 F. App'x 183, 187 (5th Cir. 2009). Similarly, in *Marshall v. Hartford Life & Acc. Ins. Co.*, a district court found a valid delegation where the policy provided:

> The plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to CNA Group Life Assurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it.

No. CIV.A. 11-10, 2011 WL 4073165, at *3 (E.D. La. Sept. 13, 2011). In *Wittmann v. Unum Life Ins. Co. of Am.*, the Plan Administrator "delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan." No. CV 17-9501, 2018 WL 5631421, at *6 (E.D. La. Oct. 31, 2018). Likewise in *Yelverton v. Am. Int'l Life Assurance Co. of New York*, the Plan Administrator had "delegated to the insurance company the full and complete discretionary authority and responsibility to decide all questions of eligibility for benefits under the Plan. The insurance company's decisions are final and binding on all persons to the full extent permitted by law." No. W-06-CA-345, 2007 WL 9710561, at *2 (W.D. Tex. June 28, 2007) These examples are neither few nor far between. *See, e.g., Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 404 (5th Cir. 2012); *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 448 (7th Cir. 2009); *Wittmann v. Unum Life Ins. Co. of Am.*, No. CV 17-9501, 2018 WL 5631421, at *6 (E.D. La. Oct. 31, 2018); *Colvill v. Life Ins. Co. of N. Am.*, No. 17-C-1290,

2018 WL 4078398, at *3 (E.D. Wis. Aug. 27, 2018); *Oliver v. Aetna Life Ins. Co.*, 55 F. Supp. 3d 1370, 1381 (N.D. Ala. 2014), *aff'd*, 613 F. App'x 892 (11th Cir. 2015); *Demand v. Unum Life Ins. Co. of Am.*, No. CIVA3:07CV1785-B,  2009 WL 90480, at *1 (N.D. Tex. Jan. 13, 2009); *Earls v. Blue Cross & Blue Shield of AL, Inc.*, No. 2:07CV00085-B-A,  2008 WL 1925179, at *3 (N.D. Miss. Apr. 30, 2008); *Lavergne v. Metro. Life Ins. Co.*, No. CIV.A. 04-0753, 2006 WL 539519, at *1 (W.D. La. Mar. 3, 2006).

Here, the Benefits Committee did not waste any words when delegating certain powers to Aetna. In fact, the sole relevant designation apparent from the record is the Benefits Committee's identification of Aetna as the Claims Administrator in the SPD, in a chart providing "details about the plans and how they are administered on a day-to-day basis, including claims administration." H1465. Certainly, the Benefits Committee did not delve into any details about what powers Aetna was authorized to wield or whether Aetna was specifically delegated the power to interpret the plan or determine benefits eligibility.

Nevertheless, a plain reading of the Plan and the SPD reveals that the identification of Aetna as the Claims Administrator did carry with it a grant of the Benefit Committee's discretionary power. Notably, both the Plan and the SPD explain that to the extent a designee or delegate has been identified, the term "Administrator" as it appears in both documents includes such designee or delegate. Accordingly, the Court must read the documents' terms in reference to Aetna, such that "[t]he plan administrator [or Aetna, as its designee]'s discretionary powers include" among other, the power to interpret the plan and determine eligibility. H1468. This interpretation is bolstered by Section 7.7 of the Plan, which governs the Plan's "Claims Filing Procedures." H1533. Specifically, Section 7.7 provides that "[a] claimant shall be entitled to benefits hereunder only to the extent so determined by the Administrator (or, as applicable, the

16

Claims Administrator).” Further, although Section 7.10 sets forth the claims procedures for disability benefits to which the Claims Administrator must abide, the Plan does not articulate what facts must be found or standards must be employed to make a particular finding, suggesting that Aetna itself is empowered to determine the standards it uses for claims administration. H1539.

## B. The Administrative Record

“[W]hen assessing factual questions, the district court is constrained to the evidence before the plan administrator.” *Vega*, 188 F.3d at 299. A court may not “stray from the [administrative record] but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim.” *Bratton*, 215 F.3d at 521. Nevertheless, for purposes of this Court’s review, the administrative record consists of all “relevant information made available to the administrator prior to the complainant’s filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.” *Vega*, 188 F.3d at 300. As the Fifth Circuit has explained,

> [b]efore filing suit, the claimant’s lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. In *Moore*, we said that ‘we may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination.’ If the claimant submits additional information to the administrator, however, that additional information should be treated as part of the administrative record. Thus, we have not in the past, nor do we now, set a particularly high bar to a party’s seeking to introduce evidence into the administrative record . . . . [I]n restricting the district court’s review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court.

*Id.* The court may therefore consider relevant evidence if it was made available to the plan administrator prior to the plaintiff’s filing suit and was presented in such a way as to afford the

plan administrator a fair opportunity to consider the evidence. *Id.*

### C. Aetna's Termination Decision

Having concluded that Aetna was properly delegated discretionary authority to make claims decisions, the Court must consider whether its decision to deny Bertucci's benefits was an abuse of discretion. Under this standard, the Court considers whether the administrator's decision was arbitrary and capricious. *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). The administrator's decision must be upheld if it is supported by substantial evidence. *Id.* "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004) (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). "[T]he law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004).

Whether an administrator has a conflict of interest is a factor in the abuse of discretion analysis. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009). A structural conflict of interests exists where, as here, the entity that funds the plan also determines eligibility for benefits. *Glenn*, 554 U.S. at 112 (2008). The Supreme Court has advised that the conflict is significant "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," but should be given less weight "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims

18

administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking." *Id.* at 117. Rather than adhering to a precise standard for making this determination, a reviewing court considering such a conflict is merely "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision." *Vega*, 188 F.3d at 298.

Here, the Court is inclined to give some credence to Aetna's conflict of interest. Although the Court is unaware of any "history of biased claims administration" on Aetna's part, *Glenn*, 554 U.S. at 117, the administrative record reveals some procedural irregularities with respect to Bertucci's particular claim that give the Court pause. *See id.* at 118 (suggesting that evidence of "procedural unreasonableness" weighs on the conflict analysis). The administration of this claim has clearly been arduous and contentious. Notably, Aetna has denied this claim, and reversed its decision on appeal or through litigation and mediation on multiple occasions. Further, in makings its final decision, Aetna relied heavily on the opinion of a non-treating physician who failed to make contact with Plaintiff's treating physicians and, more important, specifically contradicted the findings of her treating physicians to the extent he determined that Bertucci could perform a job with "no restriction with regard to sitting." H0307. Further, Aetna failed to address the SSA's finding that Bertucci was completely disabled from performing any occupation, a factor that while not dispositive, should have at least been addressed in in denial decision. See *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) (holding that the failure to consider a contrary SSA determination was an example of procedural unreasonableness that gave weight to the conflict of interest analysis). In sum, the arduous history of this claim and Aetna's failure to address directly contrary findings suggests that Aetna's conflict of interest should be considered as a factor in the proceeding analysis.

Bertucci argues Aetna abused its discretion by (1) failing to consider the substantial evidence in support of her claim and (2) failing to provide a full and fair review of her claim. The Court considers each in turn.

In relevant part, the LTD policy provides that an individual is "disabled" if, "[a]fter the first 24 months of a certified period of disability . . . [y]ou are not able, solely because of disease or injury, to work at any reasonable occupation." H0003. The Plan defines "reasonable occupation" as "any gainful activity for which you are, or may reasonably become, fitted by education, training or experience." H0020. A beneficiary is not deemed to be "working at a reasonable occupation" if the income generated by that occupation is less than 80% of his or her adjusted pre-disability earnings. H0003.

In denying Bertucci's claim for LTD benefits, Aetna first found that Bertucci was capable of working in the following "reasonable occupation[s]": Credit Analyst or Securities, Commodities, and Financial Service Sales Agent. H0274. Following Bertucci's appeal, Aetna revised the reasonable occupations it believed she could perform to Department/Business Manager and Sales Manager. H0308. Specifically, Aetna determined that Bertucci would be able to perform the full-time, sedentary duties of these professions based on the assessments of (1) Dr. Todd, the IME physician who opined on January 12, 2018 that Bertucci could perform sedentary-level work with certain accommodations; (2) Dr. Thomas, who wrote a letter on April 17, 2018 indicating that Bertucci "would be capable of performing sedentary type work with accommodations," and (3) Dr. Parillo, the peer reviewer, who recognized that although Bertucci's condition causes significant pain, it "does not result in total disability" and therefore does not preclude her from maintaining a full-time work schedule with certain accommodations. H0307.

Bertucci argues that Aetna failed to consider the substantial evidence in support of her

20

claim. Specifically, Bertucci argues she "has demonstrated that she lacks the ability to work at *any* reasonable occupation given the severity of her condition," and cites extensively from her medical records in support of her continuing and debilitating pain. R. Doc. 66-1 at 7–8. Bertucci also argues that although she may be technically capable of working for eight hours a day with certain restrictions, the necessary accommodations identified by the physicians are not compatible with the realities of a full-time sedentary position. *Id.* at 9. Bertucci stresses her position is supported by the Social Security Administration's ALJ, who found her to be completely disabled from any occupation, and the August 2018 FCE that demonstrated that she "does not meet the full criteria for competitive sedentary work." *Id.* Additionally, she argues it was an abuse of discretion for Aetna to rely so heavily on the opinion of Dr. Parillo, a non-treating physician who never examined her and whose opinion was derived solely from his review of medical records.

A review of the administrative record reveals that Bertucci suffers from post laminectomy syndrome, failed back syndrome, arachnoiditis, and radiculopathy, and has submitted to multiple surgeries in an attempt to alleviate the plain. It is clear that Bertucci lives her life in almost constant pain, and the Court doubts that a woman of her age, education, and most importantly, physical condition would be able to maintain a full-time job as either a sales manager or a department manager. However, the abuse of discretion standard does not permit the Court to substitute its judgment for Aetna's. In reviewing Aetna's decision for an abuse of discretion, the Court is cognizant that it is limited to considering only whether "substantial evidence support[s] a plan fiduciary's decisions, including those to deny or to terminate benefits, not [whether] substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability. *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004).

The Court notes that Dr. Thomas, Dr. Todd, and Dr. Parillo all apparently agree that

21

Bertucci is capable of performing some type of sedentary work. However, they appear to disagree about the amount of work Bertucci would be capable of performing and the specific accommodations that would be required. Notably, Dr. Todd opined that based on her physical abilities, Bertucci "would be capable of functioning at a sedentary level," but did not comment on the amount of time she could perform sedentary tasks. H0912. Dr. Todd explained that sedentary work would only be possible with "frequent position changes allowing her to get out and move around whenever she needs to and allowing her to sit whenever she needs to." H0912. He explained that she may need to sit or stand "perhaps as often as every 15 minutes." H0912. In response to Dr. Todd's findings, Dr. Thomas clarified that although he also believed "she would only be able to do sedentary duty with frequent accommodations," he "believ[ed] she would have difficulty sitting or standing or working for an 8 hour work day" given her condition. H0413. In contrast, even though Dr. Parillo recognized that Bertucci "would have difficult with remaining in a fixed position for a prolonged period of time," he concluded that "the restrictions/limitations of no sitting/standing for longer than 10 minutes is not reasonable or consistent with the documentation provided in the record." H0375–76. He then states that Bertucci "would be capable of returning to work" with "no restriction with regard to sitting." H0376. Parillo apparently based this finding on a review of Bertucci's records which reveled specific instances of Bertucci's ability to sit for more than 10 minutes, for example, during the FCE interview, and "video surveillance of the claimant standing for longer than 10 minutes at one time." H0376.

As an initial matter, Aetna's decision to prioritize the opinion of the non-treating peer reviewer Dr. Parillo, is not in and of itself an abuse of discretion. The Supreme Court has explained that although administrators "may not arbitrarily refused to credit a claimant's reliable evidence, including the opinions of a treating physician," they are not required to "accord special weight to

22

the opinions of a" treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Further, the Supreme Court has rejected the idea that an administrator must provide a specific "explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* Accordingly, Aetna was within its right to consider the evidence and give more weight to Dr. Parillo's opinion than the other doctors.

Nevertheless, Aetna's decision to rely so heavily on Dr. Parillo's opinion is concerning because Dr. Parillo categorically pronounced that "there is no restriction with regard to sitting," H0376, despite the fact that both Dr. Todd and Dr. Thomas, as well as both FCE examiners, and Bertucci's vocational evaluator, who noted that Bertucci had poor sitting tolerance and would need specific accommodations and restrictions with regard to sitting were she to return to sedentary work. H0413, H0450, H0912, H0426. Additionally, although Dr. Parillo suggests Bertucci is capable of returning to work full-time, no other doctor specifically comments on the length of time Bertucci would be capable of working, save for Dr. Thomas, who believes she would "have difficulty . . . working for an 8 hour day given her condition." H0413. In sum, the Court is concerned that Dr. Parillo's opinion conflicts with the records he reviewed, which consistently revealed substantial limitations with respect to the amount of time Bertucci could remain seated.

Additionally, Aetna failed to address the SSA's determination that Bertucci was totally disabled from any occupation and its subsequent decision that her disability is ongoing. H1382, H0431. Indeed, the failure to consider a contrary SSA award may constitute "procedural unreasonableness" that is "important in its own right and also 'justifie[s] the court in giving more weight" to a conflict of interest. *Schexnayder*, 600 F.3d at 471 (holding that a benefits decision was procedurally unreasonable because the Administrator's denial letters failed to acknowledge the existence of an SSA determination that was "in direct conflict with its own"). Of course, while

23

entitlement to social security benefits is certainly relevant to the final decision, the SSA's determination is not binding on Aetna. The Court recognizes that disability determinations made by the SSA are subject to a different standard than those under ERISA. *See Hammond v. UNUM Life Ins. Co. of Am.*, Civ. A. No. 05–632, 2008 WL 906522, at *11 (S.D. Miss. Mar. 31, 2008) ("[E]ntitlement to Social Security benefits is measured by a uniform set of federal criteria, but a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria. . . . [T]he determination that a claimant suffers from a disability under Social Security regulations does not require an ERISA plan administrator to reach the same conclusion."). However, the Court finds that Aetna's decision to ignore the SSA's contrary decision was unreasonable in its own right, particularly in light of Aetna's aforementioned conflict of interest in this matter, particularly because the SSA ALJ relied on largely the same evidence to reach a decision entirely contrary to Aetna's.

Furthermore, the Court finds that Aetna failed to substantially comply with ERISA's procedural requirements in considering this claim. Bertucci argues Aetna failed to provide a full and fair review of her claim in violation of Aetna's express procedural requirements. Specifically, she argues she was denied a full and fair review because Aetna (1) changed the "reasonable occupations" it believed she could perform in its final decision letter and (2) failed to identify the vocational expert who authored the report on which it relied when considering her appeal. R. Doc. 70 at 15. The Court considers each in turn.

"When denying claims, ERISA-covered employee benefit plans must: (1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310

(5th Cir. 2015). Challenges to procedural violations of ERISA are subject to a "substantial rather than strict compliance" standard. *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir. 2005). Rather than requiring technical compliance with the statutory requirements, courts consider whether the purpose of section 1133—"afford[ing] the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial"—has been fulfilled. *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009) (citing *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006); *Schneider v. Sentry Long Term Disability*, 422 F.3d 621, 627–28 (7th Cir. 2005)).

Aetna's initial denial letter determined Bertucci was not disabled because she could continue to work as a registered representative, financial planner, and factor (financial institutions). H0274. Plaintiff appealed the denial, arguing that in addition to not being able to physically perform these roles due to her medical condition, she did not possess the necessary training, education, and experience to secure such a position. H0407. Aetna's final decision letter denied eligibility on the grounds that she could work as a department/business manager and sales manager despite her physical limitations. H0308.

The question is, therefore, whether Aetna substantially complied with its obligation to provide a "full and fair review" when it changed the occupations it believed Bertucci could perform in its final decision letter. The parties seriously dispute this issue. Bertucci contends this is a "new rationale for denying the claim," and because it was contained in a final decision letter, she was deprived of any opportunity to challenge the specific basis for rejecting her claim. R. Doc. 66 at 11. In contrast, Aetna argues Bertucci was granted a full and fair review because both the initial and final claims decisions were based on the same underlying justification: Bertucci's ability to work in certain reasonable occupations.

"To comply with the "full and fair review" requirement in deciding benefit claims under ERISA, a claim administrator must provide the specific grounds for its benefit claim denial." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009). An administrator fails to substantially comply with this requirement when it deprives the claimant of the opportunity to administratively challenge a new justification for the termination of benefits identified after an appeal.

For example, in *Robinson v. Aetna Life Insurance Co.*, a sales representative sought benefits after suffering a stroke that impaired his vision and prevented him from driving, because his job required him to drive hundreds of miles each week. 443 F.3d 389, 391 (5th Cir. 2006). The administrator initially denied his claim because it believed he was capable of driving. *Id.* at 393. The plaintiff appealed the denial and introduced evidence that he was in fact not able to drive. The administrator affirmed its decision on the grounds that the position of sales representative did not require the ability to drive. *Id.* The Fifth Circuit held that the administrator had not complied with Section 1133 because it had changed the "specific ground" upon which it relied on find that the plaintiff was not disabled without affording the plaintiff the opportunity to respond.

In contrast, in *Cooper v. Hewlett Packard Co.*, the Fifth Circuit took "the opportunity to highlight the significant differences between the bait and switch tactic at issue in *Robinson*, and [an] honest, fair, and full review." 592 F.3d 645, 653 (5th Cir. 2009). In *Cooper*, the plaintiff's claim was initially denied because the medical evidence failed to establish that the was prevented from all employment. *Id.* at 652–53. The administrator affirmed the denial on appeal after consulting additional medical records that revealed that the plaintiff was in fact employed. *Id.* at 653. The Court held that the administrator's review substantially complied with ERISA because although the administrator considered a new fact it "had not considered in the initial denial of her

26

claim (this new fact being her employment), the mention of the new fact did not constitute different of separate "specific grounds" for the initial denial." *Id.* at 653–54.

Neither *Robinson* nor *Cooper* squarely align with the present facts. Here, Bertucci's claim was initially denied because Aetna believed she could perform certain "reasonable occupations," and it upheld its decision on the same grounds, although it changed the "reasonable occupations" it believed she could perform in light of evidence and argument Bertucci presented on appeal. Unlike in *Robinson*, where the plaintiff's claim was initially denied because of evidence that the plaintiff was not disabled, and that decision affirmed on the basis that his disability did not impact the performance of his job, Bertucci's claim was consistently denied on the basis that she could continue to work in some capacity. However, unlike in *Cooper*, where the initial denial was affirmed on appeal in light of evidence *supporting* the plaintiff's ability to continue working, Bertucci presented evidence on appeal that caused Aetna to shift its reasoning for denying her claim, albeit in a much less egregious manner than in *Robinson*. In other words, *Cooper* is distinguishable on the basis that here, Bertucci presented additional evidence on appeal that did not uphold the initial decision but in fact required Aetna to recognize that Bertucci would be unable to work in the occupations it had selected, reassess its original positions, and identify entirely new occupations it believed she could perform.

Although this is a close issue, the Court is inclined to find that Aetna failed to substantially comply with ERISA when it identified alternative occupations it believed Bertucci could perform. The Court stresses that Bertucci has convincingly argued in the course of this litigation that the professions Aetna has identified, which involve starting salaries well in excess of any amount Bertucci ever made, are not "reasonable occupations" for a woman in her late fifties, who has been out of the work force for seven years, who has no experience in similar roles, and who, most

importantly, is incapable of maintaining a seated position for more than fifteen minutes at a time. Whether, and to what extent these factors matter to the identification of "reasonable occupations" is a question the Plan Administrator should have the opportunity to address. Indeed, Bertucci successfully challenged the occupations Aetna originally identified in its original denial and it is certainly conceivable that she would be successful in demonstrating that these newly identified occupations are not reasonable, had she had the opportunity to respond a second time. Although the procedural violation at issue here is nowhere near as flagrant as in *Robinson*, it nevertheless prevented Bertucci from receiving a full and fair review of her claim.

Bertucci also argues Aetna's decision was procedurally unreasonable because Aetna failed to identify the vocational expert who authored a report Aetna relied on when considering Plaintiff's appeal. R. Doc. 70 at 15. Under 29 CFR 2560.503-1(h)(3)(iv), plans must "provide for the identification of medical or vocation experts whose advice was obtained on behalf of the plan in connection with" an adverse benefits decision. 29 CFR § 2560.503-1(h)(3)(iv). Generally, a plan substantially complies with this requirement when it provides a procedure through which a claimant may learn the identity of the experts. *See, e.g.*, *Provencio v. SBC Disability Income Plan*, No. SA-05-CA-0032-WWJ, 2006 WL 3927168, at *8 (W.D. Tex. Dec. 6, 2006); *Walker v. Kimberly-Clark Corp.*, No. 1:08CV146-SA-JAD, 2010 WL 611007, at *10 (N.D. Miss. Feb. 17, 2010); *Orr v. Metro. Life Ins. Co.*, No. CIV. 1:CV-04-0557, 2007 WL 2702929, at *15 (M.D. Pa. Sept. 13, 2007).

Here, Section 7.10(d) of the Plan, governing claims procedures, clearly requires the Claims Administrator to provide the "identity of those medical experts whose advice was obtained in connection with the claim," as well as "copies of all documents, records and other information relevant to the claim." H1540. This provision, which provides a method for the identification of

28

experts upon request, clearly satisfies the applicable regulation. Further, it appears as though Bertucci requested the identity of the vocational expert on April 19, 2018, this letter was in response to Aetna's April 17, 2018 *initial* termination of benefits. H0894. Nowhere does Bertucci request the identity of the vocational expert who Aetna intends to consult on appeal. Although the Court recognizes that Bertucci "did not specify a date in her request and requested such information with respect to the 'adverse benefit determination'" generally, R. Doc. 74 at 4–5, the Court declines to hold that Aetna's failure to respond with the identity of a consultant it may not have even hired yet is a substantial departure from ERISA's requirement.

"Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009). Although a Court may overturn an adverse decision "where the record establishes that the plan administrator's denial of the claim was an abuse of discretion as a matter of law," if the evidence "reflects, at minimum, a colorable claim for upholding the denial of benefits, remand is usually the appropriate remedy." *Id.* at 158 (citing *Gagliano*, 547 F.3d at 240).

Although the Court has highlighted some procedural irregularities and concerns that complicate the question, the administrative record reveals that there is at least a "colorable claim" for the denial of Bertucci's benefits, especially in light of the medical opinions that Bertucci can perform some sedentary work with specific, frequent restrictions. Nevertheless, the Court declines to decide the issue at this juncture, finding that remand to Aetna to afford Bertucci the opportunity to receive a full and fair review of her claim is the appropriate remedy.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that this matter is **REMANDED** to the Administrator for further proceedings consistent with this opinion.

New Orleans, Louisiana this 21st day of August, 2020.

_____
Eldon E. Fallon
United States District Judge